# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GARY D.[1],
      Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:21-cv-068

McFarland, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Gary D. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum (Doc. 21).

## I. Procedural Background

Plaintiff filed his application for DIB on June 15, 2015, alleging disability since January 1, 2015, due to herniated discs in his lumbar spine, sciatica, arthritis in his lumbar spine, gout, and muscle spasms. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Renita Bivins, on August 15, 2017. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. On December 21, 2017, the ALJ issued a decision denying

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

plaintiff's DIB application. The Appeals Council denied plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.

Plaintiff filed an appeal with this Court seeking judicial review of the Commissioner's decision. *See Gary D. v. Comm'r of Soc. Sec.*, No. 1:19-cv-418 (S.D. Ohio). Upon Joint Motion for Remand, the Court remanded the matter to the Commissioner for further administrative proceedings. (Tr. 604-09). The ALJ was directed on remand to: (1) consider plaintiff's maximum residual functional capacity and reweigh the medical evidence; (2) obtain a medical expert, if necessary; and (3) elicit additional medical and vocational evidence as warranted. (Tr. 613-14). Following remand, a second ALJ hearing was held on October 8, 2020, at which plaintiff, represented by counsel, appeared and testified. (Tr. 565-94). The ALJ issued an unfavorable decision on October 26, 2020, finding that plaintiff was not disabled. (Tr. 512-35). Plaintiff did not request review by the Appeals Council opting to directly file suit with this Court. This matter is properly before the Court for review.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

3

1. The [plaintiff] last met the insured status requirements of the Social Security Act on September 30, 2017.

2. The [plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2015 through his date last insured of September 30, 2017 (20 CFR 404.1571 *et seq.*).

3. Through the date insured, the [plaintiff] had the following severe impairments: obesity; "minor" osteoarthritis of the left wrist; degenerative disc disease of the cervical spine with radiculopathy; degenerative disc disease of the lumbar spine; sciatica; and borderline intellectual functioning (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned [ALJ] finds that, through the date last insured, the [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could never climb ladders, ropes, or scaffolds. He could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. He needed a sit/stand option at one-hour intervals. He needed to avoid concentrated exposure to vibrations. The [plaintiff] could understand, remember, and carry out simple instructions.

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born [in] . . . 1969 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The [plaintiff] has a limited education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in

---

[2] Plaintiff's past relevant work was a concrete finisher, a skilled, heavy exertion job, and a welder/fitter, a skilled, medium exertion job. (Tr. 527, 585).

significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a)).[3]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from January 1, 2015, the alleged onset date, through September 30, 2017, the date last insured (20 CFR 404.1520(g)).

(Tr. 517-28).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the

---

[3] Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as marker (56,000 jobs in the national economy); garment sorter (22,000 jobs in the national economy); and shipping and receiving weigher (12,000 jobs in the national economy). (Tr. 527-28, 587).

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

**D.  Specific Errors**

On appeal, plaintiff alleges the ALJ erred because (1) the ALJ failed to find plaintiff's mental health impairments were severe at Step Two of the sequential evaluation process; (2) plaintiff's residual function capacity ("RFC") was not supported by substantial evidence because it failed to account for all the severe impairments acknowledged by the ALJ; and (3) the appointment of Andrew Saul as the Commissioner of Social Security violates Separation of Powers and therefore, the ALJ, who derived his authority from Mr. Saul, is constitutionally defective.  (Doc. 13).

**1.  The ALJ's Step Two Finding is Supported by Substantial Evidence.**

In the first assignment of error, plaintiff alleges that the ALJ erred by failing to properly consider his mental health impairments.  (*Id*. at PAGEID 971-75).  Plaintiff argues that the ALJ "improperly classified [plaintiff's] mental health impairments as non-severe" and failed to include any "mental health limitations" in the RFC.  (*Id*. at PAGEID 971).  Plaintiff contends the "Court should reverse the ALJ's decision and remand this case for further proceedings" because "the ALJ's residual functional capacity does not accurately reflect [plaintiff's] capabilities. . . ." (*Id*.).

6

The Commissioner argues in opposition that the "ALJ properly evaluated Plaintiff's [mental] impairments and his arguments to the contrary fail to show reversible error." (Doc. 17 at PAGEID 1018).

At Step Two, the ALJ must consider whether plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. § 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[,]" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Importantly, "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment." SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996). *See also Griffith v. Comm'r of Soc. Sec*., 582 F. App'x 555, 559 (6th Cir. 2014) ("A severe mental impairment is established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms.") (internal quotation marks and citation omitted).

The regulations define a severe mental impairment as one that significantly limits the mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Plaintiff is not required to establish total disability at this level of the sequential evaluation process. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S*., 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with

the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimis* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

An ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ finds that the claimant "has at least one other severe impairment and continues with the remaining steps of the disability evaluation." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). "This rule is predicated on the notion that the ALJ 'properly could consider [the] claimant's [non-severe impairments] in determining whether [the] claimant retained sufficient residual functional capacity to allow [him] to perform substantial gainful activity." *Id.* (quoting *Maziarz*, 837 F.2d at 244). The Court must consider whether the ALJ "'consider[ed] limitations and restrictions imposed by all of [the claimant]'s impairments,' including his non-severe impairments," in the remaining steps of the disability determination. *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5). In other words, where the ALJ considers the "non-severe" impairments when determining the claimant's RFC, it is "'unnecessary to decide' whether the ALJ erred in classifying the impairments as non-severe at step two." *Fisk*, 253 F. App'x at 584 (citing *Maziarz*, 837 F.2d at 244).

In arguing that the ALJ erred by failing to find plaintiff has a severe mental impairment, plaintiff points to the July 2017 opinion from plaintiff's behavior counselor, Mr. John Roflow, in

which Mr. Roflow diagnosed plaintiff with depressive disorder with depressive features.  (Doc. 13 at PAGEID 972; *see also* Doc. 21 at PAGEID 1079-81).  Plaintiff argues that Mr. Roflow opined that plaintiff was limited in multiple areas because of his depressive disorder, such as struggling with concentration due to impaired sleep patterns and chronic pain, dealing with the public, interacting with supervisors, functioning independently, and the ability to use judgment, deal with stresses, maintain attention and concentration, behave in an emotionally stable manner, and relate predictably in social situations.  (*Id.*, citing Tr. 484-87).  As best the Court can discern, plaintiff argues that the ALJ erred in finding plaintiff's depressive disorder did not constitute a severe impairment because the ALJ improperly weighed Mr. Roflow's July 2017 opinion.  (*Id.*).

The ALJ found that plaintiff has the "severe" impairments of obesity; minor osteoarthritis of the left wrist; degenerative disc disease of the cervical spine with radiculopathy; degenerative disc disease of the lumbar spine; sciatica; and borderline intellectual functioning.  (Tr. 518).  The ALJ, however, determined that plaintiff's depressive disorder was not a severe impairment. (*Id.*).  In making this finding, the ALJ explained there "are no treatment records from the claimant's counselor[;] [t]he claimant did not receive emergency room or inpatient treatment for his depression through the date last insured[;] [t]here is no evidence that his depression significantly limited his ability to perform basic work activities through the date last insured; [and] therefore, it is not severe."  (*Id.*).

In finding that plaintiff's depressive disorder was not a severe impairment, the ALJ gave Mr. Roflow's opinion "little weight" "because [Mr. Roflow's] excessive limitations are inconsistent with objective evidence of record."  (Tr. 526).  The ALJ stated, "There is no

evidence of record showing the claimant received mental health treatment from January 1, 2015 to September 30, 2017.  Mr. Roflow is not an acceptable medical source because he is a counselor.  He is not a psychiatrist or psychologist.  Finally, he is not familiar with the Social Security Administration programs."  (*Id.*).

The ALJ's decision to give Mr. Roflow's opinion "little weight" is supported by substantial evidence.  First, the ALJ accurately specified that Mr. Roflow, as a behavior counselor, was not an acceptable medical source.  Under the former regulations applicable to this case, acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  20 C.F.R. § 404.1513(a) (effective until March 27, 2017).[4]  All other medical sources are classified as "other sources."  20 C.F.R. § 404.1513(d)(1).  Because a behavioral counselor is not a licensed or certified psychologist, the ALJ properly determined that Mr. Roflow was not an acceptable medical source.  Second, the ALJ properly concluded that Mr. Roflow's opinion was inconsistent with the evidence of record.  (Tr. 526).  Specifically, Mr. Roflow stated that plaintiff had "been engaged in Mental Health services and [was] addressing Anger, Relationship problems, and Maladaptive and aggressively verbally behaviors."  (Tr. 485).  Contrary to Mr. Roflow's opinion, however, the ALJ correctly stated that there "is no evidence of record showing the claimant received mental health treatment from January 1, 2015 to September 30, 2017."  (Tr. 526).  This fact is acknowledged by plaintiff in his Statement of Errors: "While it is factual that there are not records from a psychiatrist or psychologist from [] January 1, 2015[] to

---

[4] Plaintiff's application was filed on June 15, 2015.  Therefore, the current regulation governing "Categories of Evidence" found at 20 C.F.R. § 404.1513, effective March 27, 2017, is inapplicable.

September 30, 2017, there is a multitude of factors which could have precluded [plaintiff] from receiving treatment."  (Doc. 13 at PAGEID 975).

Plaintiff argues that Mr. Roflow's opinion is consistent with the medical evidence of record because Dr. Sabir Quraishi, plaintiff's treating physician, and Kristen Pertuset, a nurse practitioner who examined plaintiff, similarly "comment[ed] on the presence of mental health limitations." (Doc. 13 at PAGEID 974, citing Tr. 492, 505).  Contrary to plaintiff's argument, however, these cited treatment notes do not include, or discuss, any mental health limitations. Tr. 492 is a single page from a physical medical source statement completed by Ms. Pertuset. There, under the "ATTENTION/CONCENTRATION" section of the assessment, Ms. Pertuset opined that plaintiff's ability to maintain attention and concentration on work throughout an 8-hour workday "could [be] compromise[d]" by pain and prescription medication. (*Id.*).  Ms. Pertuset makes no finding on any alleged mental health limitations in this assessment.  Similarly, Tr. 505 is a single page from a physical medical source statement completed by Dr. Quraishi where he opined that plaintiff's "[a]ttention and concentration is altered due to pain and neuropathy." (Tr. 505).  Dr. Quraishi explained that plaintiff "is on prescribed medication that causes drowsiness at times." (*Id.*).  Nowhere in this assessment, or elsewhere in the medical record, does Dr. Quraishi opine that plaintiff presents with, or suffers from, any mental health limitations.  As such, the ALJ's finding that Mr. Roflow's opinion is inconsistent with the record is supported by substantial evidence.  The ALJ therefore properly weighed Mr. Roflow's opinion.

For the stated reasons, the ALJ's finding that plaintiff's depressive disorder was not a severe impairment at Step Two of the sequential evaluation process is supported by substantial evidence.

However, even if the ALJ erred in failing to characterize plaintiff's depressive disorder as a severe impairment, any such error would be harmless. The ALJ found plaintiff suffers from several severe impairments, proceeded with the remaining steps of the sequential evaluation process, and ultimately addressed all of plaintiff's impairments, both mental and physical, in determining his residual functional capacity. *Maziarz*, 837 F.2d at 244. Specifically, although plaintiff contends the "ALJ's [RFC] is void of any mental health limitations," the ALJ's RFC specifically takes into account plaintiff's non-severe mental impairments and includes restrictions to accommodate all of plaintiff's impairments, both severe and non-severe. (*See* Tr. 521-22; *see also* Tr. 519: "The undersigned [ALJ] considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.").

Additionally, plaintiff has not shown that even if the ALJ was bound to find his depressive disorder severe, that this impairment would impose additional functional limitations which the ALJ failed to include in the RFC finding. Because plaintiff has not shown that the record supports the imposition of additional functional limitations to account for his depressive disorder, any erroneous assessment of this impairment as non-severe by the ALJ in this case would be harmless. *See Foster v. Bowen*, 853 F.2d 483, 488-89 (6th Cir. 1988) (relevant consideration in disability case is not claimant's diagnoses, but whether impairments impose

disabling limitations). The Court finds that the ALJ properly considered plaintiff's depressive disorder in the residual functional capacity determination, regardless of whether the ALJ should have characterized this impairment as severe. *See Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (improper designation of an impairment as non-severe at step two is legally irrelevant if other impairments are considered severe). The ALJ's RFC determination in this regard is therefore based on substantial evidence and plaintiff's first assignment of error should be overruled.

### 2. The ALJ's RFC is Not Supported by Substantial Evidence.

In the second assignment of error, plaintiff argues that the "ALJ's decision should be reversed because the ALJ's residual functional capacity is not an accurate depiction of [plaintiff's] functional capabilities." (Doc. 13 at PAGEID 976). Plaintiff argues that the ALJ's RFC "does not account for all of the severe impairments acknowledged by the ALJ" because the ALJ's RFC "was largely based on" the opinions of the "state agency physicians and the consultative examiner," and the "ALJ discredited the opinions of the treating physician, Dr. Quraishi, and the nurse practitioner, Ms. Pertuset." (*Id*.). Plaintiff's primary argument is that the ALJ's RFC fails to include limitations and restrictions from his severe impairment of cervical degenerative disc disease. (*Id*. at PAGEID 976-77). In this regard, plaintiff alleges that, in formulating the RFC, the ALJ "most heavily relied on the opinions of the state agency physicians and consultative examiner," who "did not consider [plaintiff's] cervical degenerative disc disease." (*Id*.). Plaintiff alleges the ALJ erred by relying on the state agency physicians and the consultative examiner because "the record does not contain evidence of cervical spine issues

until after the examination and until after the state agency reviewers were complete." (*Id.* at

PAGEID 977). Plaintiff therefore alleges that in "largely" formulating the RFC based on the

opinions of the state agency physicians and the consultative examiner, the ALJ's RFC is not

supported by substantial evidence because these "sources did not consider [plaintiff's] severe

cervical degenerative disease" and instead, "focused on [plaintiff's] lower back problems." (*Id.*).

Plaintiff alleges that the ALJ erred because the "limitations opined by Dr. Quraishi and Ms.

Pertuset were omitted from the residual functional capacity." (*Id.* at PAGEID 979).

The Commissioner argues that the ALJ's RFC is supported by substantial evidence, and

the ALJ properly weighed the opinion evidence of record. (Doc. 17).

A claimant's RFC is an assessment of the most that a claimant "can still do despite [his]

limitations." 20 C.F.R. § 404.1545(a)(1). The Social Security regulations vest the ALJ with the

responsibility of assessing an individual's RFC. *See* 20 C.F.R. § 404.1546(c) (the responsibility

for assessing a claimant's RFC at the administrative hearing level lies with the ALJ). The ALJ is

responsible for assessing a claimant's RFC based on all of the relevant medical and other

evidence. 20 C.F.R. § 404.1545(a)(3). This includes weighing the relevant medical opinions of

record. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).

It is well-established that the findings and opinions of treating physicians are entitled to

substantial weight.[5] Under the treating physician rule, "greater deference is generally given to

the opinions of treating physicians than to those of non-treating physicians. . . ." *Rogers*, 486

F.3d at 242; *Wilson*, 378 F.3d at 544. The rationale for the rule is that treating physicians are

---

[5] 20 C.F.R. § 404.1527, which sets out the treating physician rule, has been amended for claims filed on or after
March 27, 2017. *See* 20 C.F.R. § 404.1520c. This amendment does not apply to plaintiff's claims, which he filed in
June 2015. (*See* Tr. 515).

14

"the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Rogers*, 486 F.3d at 242.

A treating source's medical opinion must be given controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If a treating source's medical opinion is not entitled to controlling weight, the ALJ must apply the following factors in determining what weight to give the opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544. *See also Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4) ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors provided in" 20 C.F.R. § 404.1527(c)).

In addition, an ALJ must "give good reasons in [the] notice of determination or decision for the weight [given to the claimant's] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). The ALJ's reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). This

requirement serves a two-fold purpose: (1) it helps a claimant to understand the disposition of his

case, especially "where a claimant knows that his physician has deemed him disabled," and (2) it

"permits meaningful review of the ALJ's application of the [treating-source] rule." *Wilson*, 378

F.3d at 544.

### a. Dr. Quraishi

On July 31, 2017, Dr. Quraishi, plaintiff's treating physician, completed a medical source

statement on behalf of plaintiff (Tr. 503-06) and opined that plaintiff could not lift more than 10

pounds, occasionally and frequently; and he could stand and walk for less than 2 hours, and sit

for less than 6 hours in an 8-hour workday. (Tr. 503-04). Dr. Quraishi also opined that plaintiff

had a limited ability to push and pull with the upper and lower extremities; he could never crawl

or climb ramps, stairs, ladders, ropes, or scaffolds; he could only occasionally balance, kneel,

crouch, and stoop; he had limitations in reaching in all directions, handling, fingering, and

feeling constantly; he had limited ability to see and hear; and he had limited ability to work in

temperature extremes, dust, vibration, humidity, wetness, hazards, fumes, odors, chemicals, and

gases. (Tr. 504-06).

The ALJ gave "little weight" to Dr. Quraishi's opinion "because the excessive limits are

inconsistent with the overall evidence of record, which he did not review." (Tr. 526). In

weighing Dr. Quraishi's opinion, the ALJ states:

> Findings of normal motor strength in the upper and lower extremities do not support
> lifting and carrying less than 10 pounds (Exhibits 8F, 10F/4). The assessment is
> internally inconsistent. For example, Dr. Quraishi opined the claimant has a
> "limited" ability to reach, handle, finger, and feel; however, he said that the
> claimant could do these things "constantly". Dr. Quraishi does not specialize in
> neurosurgery or orthopedics. Instead, he is an internal medicine physician. He is

16

not familiar with Social Security Administration programs.  In addition, he has a limited treatment history with the claimant.

(*Id*.).

The ALJ's decision to give little weight to Dr. Quraishi's opinion is not substantially supported by the record.  First, the ALJ did not properly evaluate Dr. Quraishi's opinion for "controlling" weight.  "The requirement to give controlling weight to a treating source is presumptive; if the ALJ decides not to do so, he must provide evidentiary support for such a finding." *Patterson v. Comm'r of Soc. Sec.*, No. 3:16-cv-2345, 2018 WL 502669, at *9 (N.D. Ohio Jan. 19, 2018) (citing *Wilson*, 378 F.3d at 546; *Gayheart*, 710 F.3d at 376-77).  In fact, the ALJ failed to mention the concept of "controlling weight" when analyzing Dr. Quraishi's opinion.  *See Gayheart*, 710 F.3d at 377 (finding error where the ALJ's "analysis does not explain to which aspect of the controlling-weight test [a] critique is relevant"); *see also Martin v. Colvin*, 207 F. Supp. 3d 782, 789 (S.D. Ohio 2016).

Moreover, the ALJ did not provide proper evidentiary support for his finding that Dr. Quraishi's opinion is inconsistent with the other medical evidence in the file.  *See* 20 C.F.R. § 404.1527(c)(2); *Gayheart*, 710 F.3d at 376.  Rather, with no accompanying explanation, the ALJ cited two treatment notes as support for the statement that "[f]indings of normal motor strength in the upper and lower extremities do not support lifting and carrying less than 10 pounds."  (Tr. 526, citing Exhibits 8F, 10F/4).  Exhibit 8F is the November 2015 consultative exam by Dr. Aina, which occurred *prior* to the onset of plaintiff's cervical impairment, and does not support the ALJ's conclusion.  In addition, Exhibit 10F/4 is the May 2016 report from plaintiff's neurosurgeon.  Despite clinical findings of 5/5 motor strength (with significant guarding in the

17

right upper extremity), the neurosurgeon nevertheless recommended an Anterior Cervical

Discectomy and Fusion at C4/5 and C5/6 given the MRI findings of multilevel cervical

spondylosis at C3/4 through C6/7 with predominant pathology at C5/6 greater than C4/5,

consistent with EMG findings and plaintiff's severe neck pain with right upper extremity pain.

(Tr. 472).  As explained *infra*, these were the precise findings upon which Dr. Quraishi relied in

imposing lifting restrictions of less than 10 pounds.  *See* p. 20, *infra*.  The ALJ's citation to

normal motor strength does not substantially support his decision to discount Dr. Quraishi's

opinion.

Apart from these two citations to the record, however, the ALJ fails to cite any other

evidence that is inconsistent with the other aspects of Dr. Quraishi's opinion.  For example, the

ALJ fails to cite any evidence that is inconsistent with Dr. Quraishi's opinions that plaintiff could

stand and walk for less than 2 hours, and sit for less than 6 hours in an 8-hour workday; he had a

limited ability to push and pull with the upper and lower extremities; he could never crawl or

climb ramps, stairs, ladders, ropes, or scaffolds; he could only occasionally balance, kneel,

crouch, and stoop; he had limited ability to see and hear; and he had limited ability to work in

temperature extremes, dust, humidity, wetness, hazards, fumes, odors, chemicals, and gases.  (Tr.

503-06).  Thus, it is impossible to discern from the ALJ's written decision what specific

evidence he found to be inconsistent with Dr. Quraishi's opinion as to the above limitations and

restrictions.  Further, the ALJ did not evaluate whether Dr. Quraishi's opinion was supported by

medically acceptable clinical findings and laboratory diagnostic techniques, as required by 20

C.F.R. § 404.1527(c)(2). The ALJ therefore did not complete the first step of the treating physician analysis.

Because the ALJ did not give the treating physician's medical opinion "controlling" weight, he was bound to evaluate Dr. Quraishi's opinion in accordance with the regulatory factors provided in 20 C.F.R. § 404.1527(c) and to give "good reasons" for the weight he afforded the opinion. *Wilson*, 378 F.3d at 544; *see also Blakley*, 581 F.3d at 408 ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors provided in" 20 C.F.R. § 404.1527(c)) (quoting SSR 96-2p, 1996 WL 374188, at *4). The ALJ was obligated to consider the length, nature and extent of his treatment relationship with plaintiff; the frequency of examination; his medical specialty; the evidentiary support for the opinion and its consistency with the record; and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2). A brief explanation of the reasons for discounting a treating physician's opinion "may satisfy the good reasons requirement, if that brief analysis touches on the required factors." *Patterson*, 2018 WL 502669, at *9 (citing *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009)). But a conclusory statement by the ALJ that the treating physician's opinion "is inconsistent with the record is insufficient to satisfy the rule." *Id*. (citing *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)). "Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Friend*, 375 F. App'x at 551.

Here, the ALJ failed to provide sufficiently specific "good reasons" for rejecting Dr. Quraishi's opinion.  Instead, the ALJ's reasons for discounting Dr. Quraishi's opinion are impossible to discern from the ALJ's brief and conclusory statements (Tr. 526) and preclude "meaningful review" of the ALJ's application of the treating physician rule.  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); *Wilson*, 378 F.3d at 544.

First, the ALJ's statement that Dr. Quraishi's opinion is "inconsistent with [the] overall evidence of record, which he did not review" (Tr. 526) is belied by Dr. Quraishi's assessment, which indicates that he expressly considered medical and clinical findings to support his conclusions.  (Tr. 504).  Specifically, Dr. Quraishi listed the following findings in support of his assessment and resulting opinion:

EMG - showing cervical radiculopathies.

MRI - showing protrusion C5-6-7, [foraminal] narrowing, severe C6 nerve roots [with] facet arthropathy.

X-rays – Degeneration [with] spondylosis to C4-C7.

Exam – showing neck [with] painful ROM, lumbar tenderness.
* * *
Patient [with] noted neuropathy pain to extremities X4.  Reflexes poor [with] pain, tingling, and numbness to extremities X4, bilateral hands and feet.  More prominent symptoms to [right] side.  Lumbar pain [with] any of these activities listed.

(*Id*.).  The ALJ fails to specifically cite to any portion of the record that was inconsistent with Dr. Quraishi's opinion to enable the Court to discern whether the ALJ's basis for discounting Dr. Quraishi's opinion constitutes a "good reason" under the law.   Accordingly, the ALJ's justification for giving little weight to Dr. Quraishi's opinion is without substantial support in the record.

Second, the ALJ's statement that Dr. Quraishi "has a limited treatment history with the claimant" is at odds with the ALJ's finding that Dr. Quraishi was plaintiff's treating physician. It is undisputed that Dr. Quraishi was plaintiff's treating physician (Tr. 526; Doc. 17 at PAGEID 1027: "The ALJ acknowledged that Dr. Qu[r]aishi was a treating physician (Tr. 526)."), and the record reflects that Dr. Quraishi assessed plaintiff numerous times, over a multi-year period, during their treating relationship. (Tr. 446-47, 503-06, 509-10). Therefore, the ALJ's contention that Dr. Quraishi "has a limited treatment history with plaintiff" is not substantially supported by the evidence of record.

Third, the only other reasons the ALJ referenced in weighing Dr. Quraishi's opinion were the lack of specialization and the lack of familiarity with Social Security Administration Programs. (Tr. 526). However, the ALJ did not indicate what, if any, significance he placed on these factors. The ALJ did not explain why Dr. Quraishi's specialization as an "internal medicine physician" detracted from the weight given to his opinion. Nor did the ALJ explain why Dr. Quraishi's alleged unfamiliarity with "Social Security Administration programs" detracted from Dr. Quraishi's opinion.

The ALJ's failure to follow the procedural requirement of "identifying the reasons for discounting [Dr. Quraishi's] opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence. . . ." *Friend*, 375 F. App'x at 551.

Though there are instances where such "procedural violation[s] may constitute harmless error, such as when 'a treating source's opinion is so patently deficient that the Commissioner

could not possibly credit it' or where the Commissioner 'has met the goal of . . . the procedural

safeguard of reasons[,]'" this is not one of them. *Fisk*, 253 F. App'x at 586 (quoting *Wilson*, 378

F.3d at 547). The Court is unable to engage in "meaningful review" of the ALJ's decision,

*Wilson*, 378 F.3d at 544, because it is not "sufficiently specific to make clear" to the Court that

the ALJ considered Dr. Quraishi's opinion in accordance with the applicable regulations. The

Court cannot say that the treating physician's opinion was "so patently deficient that the

Commissioner could not possibly credit it." *Wilson*, 378 F.3d at 547.

Accordingly, this matter should be reversed and remanded for a re-weighing of Dr.

Quraishi's opinion in accordance with the factors set forth in 20 C.F.R. § 404.1527. This matter

should also be reversed and remanded for further proceedings with instructions to the ALJ to

reassess plaintiff's RFC, giving appropriate weight to the opinion of Dr. Quraishi, including an

explanation on the record for the weight afforded to the opinion, and to consider the restrictions

and limitations imposed by plaintiff's severe impairment of cervical degenerative disc disease.

### b. Ms. Pertuset

On July 11, 2017, Ms. Pertuset completed a medical source statement on behalf of

plaintiff (Tr. 490-93) and opined that plaintiff was capable of lifting up to 20 pounds

occasionally and 10 pounds frequently, and he could stand and walk for at least two hours in an

8-hour workday, noting "[plaintiff] states [he is] in extreme pain [after] 2 hours." (Tr. 490). Ms.

Pertuset also opined that plaintiff must periodically alternate sitting and standing to relieve pain

or discomfort, and he had a limited ability to push and pull with the upper and lower extremities,

noting "causes low back pain when pushing or pulling 5/10 scale." (Tr. 491). She further opined

that plaintiff could never kneel, crouch, crawl, or stoop; he could never climb ramps, stairs, ladders, ropes, or scaffolds; and he could occasionally balance. (*Id*.). Ms. Pertuset opined that plaintiff could frequently reach in all directions, and he could see, hear, speak, handle, finger, and feel with no limitation. (Tr. 492). Ms. Pertuset also opined that plaintiff had no limitation in the ability to work in an environment with temperature extremes, noise, dust, humidity and wetness, and fumes, odors, chemicals, and gases, but he had limited ability to work in an environment with vibration and hazards because "vibration and heavy machinery/heights cause nerve pain that makes it intolerable for the patient to work." (Tr. 493)

The ALJ gave Ms. Pertuset's opinion "little weight" because "she is not an acceptable medical source." (Tr. 525). The ALJ clarified:

> She is not a medical doctor. Instead, she is a nurse practitioner. She is not familiar with Social Security Administration programs of the evidence of record. The opinion is not supported by the objective findings. Findings of normal motor strength in the upper and lower extremities, normal ambulation, and ability to squat do not support the limitations of never kneeling, crouching, crawling, stooping, or climbing ramps and stairs (Exhibits 5F/3; 10F/4).

(*Id*.).

Plaintiff argues that the ALJ's RFC was not supported by substantial evidence because "Ms. Pertuset [] expressly considered [plaintiff's] cervical spine issues . . . [by] not[ing] that because of those problems, [plaintiff] would require the ability to alternate positions between sitting and standing, and was limited to two hours of standing or walking." (Doc. 13 at PAGEID 978, citing Tr. 490-91). While Ms. Pertuset's assessment appears to be consistent with that of Dr. Quraishi's, plaintiff does not explain how the ALJ erred in giving little weight to Ms. Pertuset's opinion. "It is not sufficient for a party to mention a possible argument in the most

skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d

989, 995-96 (6th Cir. 1997). *See also Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th

Cir. 2006) (a plaintiff's failure to develop an argument challenging an ALJ's non-disability

determination amounts to a waiver of that argument). Plaintiff failed to develop this argument

legally or factually, provide any analysis, or cite to any specific reasons as to why plaintiff

believes the ALJ committed error. Therefore, to the extent plaintiff argues that the ALJ erred in

evaluating the opinion of Ms. Pertuset, any such argument is waived. *See Kuhn v. Washtenaw

Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) (internal citations omitted) (emphasis added) (The Sixth

Circuit "has consistently held that arguments not raised in a party's opening brief, *as well as

arguments adverted to in only a perfunctory manner*, are waived").

### c. State agency physicians

On July 27, 2015, state agency physician Dr. David Knierim completed a physical

residual functional capacity assessment and concluded that plaintiff could occasionally lift and/or

carry 20 pounds, frequently lift and/or carry 10 pounds, sit and/or walk about 6 hours in an 8-

hour workday, and sit about 6 hours in an 8-hour workday. (Tr. 70-78). Dr. Knierim opined that

plaintiff had no limitations in climbing ramps, stairs or balancing, and he had occasional

limitations in climbing ladders, ropes, and scaffolds, stooping, crouching, and crawling. (Tr. 75-

76). Dr. Knierim noted that plaintiff had no manipulative, visual, communicative, or

environmental limitations. (Tr. 76). State agency physician Dr. Abraham Mikalov reviewed

plaintiff's file upon reconsideration on November 24, 2015, and affirmed Dr. Knierim's findings,

except opining that plaintiff could only occasionally climb ramps and stairs, and he could never climb ladders, ropes, or scaffolding.  (Tr. 88).

The ALJ gave the opinions of the state agency physicians "great weight" because "they are consistent with the claimant's left wrist osteoarthritis, cervical spine degenerative disc disease with radiculopathy, lumbar spine degenerative disc disease, and sciatica (Exhibits 2F, 3F, 4F, 9F, 15F, 16F)."  (Tr. 525).  In giving these opinions great weight, the ALJ further explained:

> The claimant's cervical spine degenerative disc disease with radiculopathy supports no climbing ladders, ropes, or scaffolds.  Nerve conduction and EMG studies showed acute C5 and C6 radiculopathies (Exhibit 14F/5).  Objective findings of lumbar spine tenderness, paralumbar spasm, normal motor strength in the upper and lower extremities, and normal ambulation support the limitation of light exertional work (Exhibits 5F/3; 10F/4).  The undersigned [ALJ] added the claimant needed to avoid concentrated exposure to vibrations based upon his degenerative disc disease.

(*Id.*).

On October 4, 2015, Dr. Olayinka Aina consultatively examined plaintiff and concluded that plaintiff could "lift, pull, and push 30 pounds, frequently about 20 pounds"; prolonged sitting or standing for one to two hours would be affected; and his ability to handle objects, hear, speak, and travel short distances was unaffected by his impairments.  (Tr. 457).  On physical examination, Dr. Aina noted that plaintiff was well oriented, cooperative, and ambulated with normal gait without any assistive devices; he was able to walk on his heels and toes and squat; and his Romberg's test was negative.  (Tr. 457).  Examination of the joints did not reveal any edema, erythematic or ecchymosis; there was no tenderness on palpation of all the joints; the patella was unremarkable bilaterally, and all of the joints, including the knee joints, were stable.

(*Id.*). Dr. Aina noted limited range of motion in the lumbar sacral region. (*Id.*; *see also* Tr. 458-61).

The ALJ gave Dr. Aina's opinions "great weight" because the opinion was "consistent with treatment." (Tr. 525). The ALJ explained:

> The claimant's degenerative disc disease of the lumbar spine and sciatica support the limitation of sitting and standing for 1 to 2 hours at a time. However, the overall findings of decreased range of motion of the lumbar spine, lumbar spine tenderness, normal strength in the upper and lower extremities, and cervical spine radiculopathy support lifting and carrying 20 pounds occasionally and 10 pounds frequently (Exhibits 5F/3; 10F/4; 14F/5).

(*Id.*).

To the extent plaintiff argues that the ALJ erred by relying on the opinions from the state agency physicians and the consultative examiner because they did not have the opportunity to review the full evidence of record, including plaintiff's severe impairment of cervical degenerative disc disease (Doc. 13 at PAGEID 976-79), plaintiff's argument is moot in light of the Court's recommendation that this matter be reversed and remanded with instructions for the ALJ to, among other things, reassess plaintiff's RFC and to consider the restrictions and limitations imposed by plaintiff's severe impairment of cervical degenerative disc disease. For this reason, on remand, it is also recommended that the ALJ reweigh the opinions of the state agency physicians and the consultative examiner in light of the additional evidence of record acquired after their opinions were rendered.[6]

---

[6] In his third assignment of error, plaintiff argues that the appointment of Andrew Saul as a single Commissioner of Social Security who is removable only for cause and serves a longer term than that of the President violates separation of powers. Plaintiff contends that as a result, the decision in this case, by an ALJ and Appeals Council judges who derived their authority from Mr. Saul, is constitutionally defective. (Doc. 13 at PAGEID 979, citing *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020)). The Court need not reach the constitutional issue raised in plaintiff's third assignment of error. The constitutional avoidance doctrine instructs federal courts to refrain from rendering constitutional rulings unless absolutely necessary. *See Torres v. Precision Indus., Inc.*, 938

### III. This matter should be reversed and remanded for further proceedings

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the undersigned notes that all essential factual issues have not been resolved in this matter. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be reversed and remanded for further proceedings with instructions to the ALJ to reassess plaintiff's RFC, giving appropriate weight to the opinion of Dr. Quraishi, including an explanation on the record for the weight afforded to the opinion, and to consider the restrictions and limitations imposed by plaintiff's severe impairment of cervical degenerative disc disease. The ALJ should further be instructed to reweigh the opinions of the state agency physicians and the consultative examiner in light of the additional evidence of record acquired after their opinions were rendered; to reassess plaintiff's subjective allegations of pain and limitations; and for further medical and vocational evidence as warranted.

---

F.3d 752, 754 (6th Cir. 2019) ("[Federal courts will not] decide questions of a constitutional nature unless absolutely necessary to a decision of the case or formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.") (internal quotation marks omitted). *See also Hoffer v. Comm'r of Soc. Sec.*, No. 3:20-cv-02871, 2022 WL 584666, at *6 (N.D. Ohio Feb. 11, 2022), *report and recommendation adopted*, 2022 WL 580756 (N.D. Ohio Feb. 25, 2022) (declining to reach constitutional question in Social Security disability appeal where matter was remanded on the merits); *Taffy D. v. Comm'r of Soc. Sec.*, No. C21-5146-MLP, 2021 WL 4988717, at *6 (W.D. Wash. Oct. 27, 2021) (declining to reach separation of powers issue because case resolved on other claims of error based on principle of constitutional avoidance); *Rosalinda B. v. Kijakazi*, No. 2:20cv341, 2021 WL 5997979, at *10 (N.D. Ind. Dec. 20, 2021) (same).

**IT IS THEREFORE RECOMMENDED THAT:**

Based on the foregoing, plaintiff's Statement of Errors (Doc. 13) be **SUSTAINED IN PART AND OVERRULED IN PART** and the Commissioner's non-disability finding be **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this Report and Recommendation.

Date: _7/22/2022_____

Karen L. Litkovitz
Chief United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GARY D.,                                      Case No. 1:21-cv-068
      Plaintiff,                        McFarland, J.
                                              Litkovitz, M.J.
      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

29